FILED ___ ENTERED
LODGED ___ RECEIVED

MAY 08 2001

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER BROWNE,

    Plaintiff,

v.

MICROSOFT CORPORATION; MICROSOFT LICENSING, INC.,

    Defendant

CASE NO. C99-1665C

ORDER

This matter comes before the Court on Defendants' motions for summary judgment. The Court, having considered the briefs submitted by the parties and determined that oral argument is not necessary, hereby finds and rules as follows.

**I. Background**

This is a race and age discrimination case against Microsoft (doing business both in Washington and in Nevada). The plaintiff, Mr. Browne, is a 58 year old African American, who has been with Microsoft since 1995, and has, by his own testimony, become a Microsoft millionaire. He went on medical leave recently to undergo treatment for prostate cancer, and when we was released to go back to work, Microsoft offered him a new job. He turned it down, however, because he felt that the job offer was "clearly pretextual."

ORDER – 1

Five claims are before the court:

(1) Disparate Impact Claim: Mr. Browne claims that Microsoft's evaluation, promotion, and compensation practices have a disproportionately negative effect on African-American and older employees.

(2) Back-Pay/Front-Pay Claims: Mr. Browne claims that because he was constructively discharged from Microsoft for discriminatory reasons he is entitled to back-pay and front-pay.

(3) Forced Exercise Claim: Mr. Browne claims that Microsoft's alleged discriminatory conduct forced Mr. Browne to exercise stock options before he would have otherwise.

(4) Jumbo Stock Option Claim: Mr. Browne claims that Microsoft denied him a jumbo stock option grant in violation of several statutes

(5) Promissory Estoppel and Negligent Misrepresentation Claims: Mr. Browne claims that Microsoft made and broke promises of continued employment sufficient to overcome any presumption of at-will employment.

Microsoft seeks summary judgment on all five claims.

Rule 56 states that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 154 (1970). In determining whether an issue of fact exists, all evidence and reasonable inferences must be viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

The Court GRANTS summary judgment on all five claims.

**II. Disparate Impact Claim**

Mr. Browne claims that Microsoft's evaluation, promotion, and compensation practices have a

ORDER – 2

1  disproportionately negative effect on African-American and older employees. Microsoft claims that Mr.
2  Browne has not met his burden of providing evidence that would allow a rational jury to conclude that
3  Microsoft's practices have had a disparate impact on older and African-American workers. The facts
4  indicate that Microsoft is correct that Mr. Browne has not met this burden.

5  Disparate impact claims arise whenever a facially neutral business practice has an adverse impact
6  on members of a protected class (such as racial minorities or older workers). See 42 U.S.C. 2000e-
7  2(k)(1). It is not necessary for the plaintiff to show an intent to discriminate. See Lowe v. City of
8  Monrovia, 775 F.2d 998, 1004 (9th Cir. 1985). Disparate impact claims are recognized under the ADA,
9  see Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642 645-46, 109 S.Ct. 2115 (1989), the ADEA,
10 see Mangold v. California Public Utilities Commission, 67 F.3d 1470 (9th Cir. 1995), the WLAD, see
11 Oliver v. Pacific Northwest Bell Telephone Co., Inc., 106 Wash.2d 675, 678 (1986), and the Nevada law
12 prohibiting discrimination in employment, see NRS Ch. 613, Apececche v. White Pine County, 96 Nev.
13 723, 726 (Nev. 1980). A plaintiff who brings a disparate impact cause of action in the Ninth Circuit
14 must:

15 (1)    Identify the specific employment practices or selection criteria being challenged,

16 (2)    Show disparate impact, and

17 (3)    Prove causation.

18 Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990). The parties agree that Mr. Browne has
19 established step (1), but disagree whether Mr. Browne has established elements (2) and (3).

20 To show disparate impact under element (2), a plaintiff must establish that an employment
21 practice selects members of a protected class in a proportion smaller than their percentage in the pool of
22 actual applicants. See Lowe, 775 F.2d at 1004. It is not enough for plaintiffs simply to show that an
23 employment practice selects members of a protected class in a proportion smaller than their percentage
24 in the general population, or that the practice selects members of a protected class in a proportion that is
25 small in some absolute sense. See, e.g., Wards Cove, 490 U.S. at 656 ("a Title VII plaintiff does not

26 ORDER – 3

1  make out a case of disparate impact simply by showing that, 'at the bottom line', there is a racial
2  imbalance in the work force").

3    The focus of the parties' dispute regarding element (2) is on whether disparate impact plaintiffs
4  must come forth with elaborate or sophisticated statistical data in showing disparate impact. Plaintiff's
5  Disparate Impact Memo at 1-3; Defendant's Disparate Impact Memo at 6-12, Defendant's Disparate
6  Impact Reply Memo at 2-7. Mr. Browne makes two arguments against the use of statistics in
7  establishing element (2) of disparate impact cases. First, Mr. Browne argues that case law does not state
8  that statistics are the only means for establishing element (2). Plaintiff's Disparate Impact Memo at 2.
9  He does not identify, nor do the cases to which he cites (e.g., Robinson v. Adams, 847 F.2d 1315, 1318
10 (9th Cir. 1987), Lowe, 775 F.2d at 1004), any other way of establishing element (2). Indeed, the very
11 definition of 'disparate impact' would seem to entail some comparison between the pool of available
12 applicants and those actually promoted or hired. Second, Mr. Browne argues that it is not sound public
13 policy to require plaintiffs with limited means to pay the cost of hiring expensive experts to perform
14 elaborate statistical analyses simply to prove a disparate impact claim. This argument is unavailing for
15 two reasons: First, Mr. Browne is not among those plaintiffs unable to afford to hire expert statisticians;
16 second, it is also against public policy to allow plaintiffs to prevail on disparate impact claims that have
17 no merit. The only way to determine if such claims have merit is to see if there is in fact any disparate
18 impact, i.e., any statistical difference between the proportion of members of a protected class selected for
19 employment or promotion and the proportion of members of a protected class in the pool of actual
20 applicants. Thus, the real issue, the only issue with respect to element (2), is whether Mr. Browne has
21 shown that Microsoft's hiring and promotion practices have selected older and African-American
22 workers in a proportion smaller than their percentage in the pool of actual applicants.[1]

---

[1] Mr. Browne also raises issues of subjective decision-making regarding hiring and promotion at Microsoft. Plaintiff's Disparate Impact Memo at 3-4. These issues are of little relevance unless and until Mr. Browne establishes the requisite disparate impact through an

ORDER – 4

1  Mr. Browne has failed to make the requisite showing that Microsoft's hiring and promotion
2  practices have selected older and African-American workers in a proportion smaller than their
3  percentage in the pool of actual applicants. Mr. Browne has come forward only with the "common
4  sense" and "general statistical" evidence that is essentially the "bottom line" evidence of racial
5  imbalance that the Supreme Court found insufficient in disparate impact cases. See Wards Cove 490
6  U.S. at 656. Mr. Browne's "anecdotal" evidence is insufficient to establish the required disparate impact
7  on an entire class (rather than simply on Mr. Browne). See, e.g., Oliver, 106 Wash.2d at 681-83. Thus,
8  Mr. Browne has failed to meet his burden of establishing element (2) in the prima facie case of disparate
9  impact.[2]

10  For the foregoing reasons, summary judgment on Mr. Browne's disparate impact claim is
11  GRANTED.

## III. Back-Pay/Front-Pay Claims

13  Mr. Browne claims that he is entitled to back-pay and front-pay for having been constructively
14  discharged from Microsoft. Microsoft claims that Mr. Browne is not entitled to back-pay and front-pay
15  because he failed to mitigate his damages by seeking comparable employment. While Mr. Browne is
16  not entitled to these damages because he failed to provide adequate evidence of disparate impact, the
17  facts also indicate that Mr. Browne has failed to come forward with evidence sufficient to allow a
18  rational jury to find that he took reasonable steps to mitigate his damages.

19  A discrimination defendant claiming that the plaintiff failed to mitigate damages must establish
20  (1) that suitable equivalent positions were available to the plaintiff, and (2) that the plaintiff failed to use
21  reasonable care and diligence in seeking equivalent positions. Odima v. Westin Tucson Hotel, 53 F.3d

---

appropriate comparison of the racial and age make-up of the selected workers and the pool of applicants.

[2] Because Mr. Browne did not establish disparate impact under element (2), the issue of causation under element (3) does not arise.

ORDER – 5

1484, 1497 (9th Cir. 1995). Questions regarding failure to mitigate damages are ordinarily factual questions best left for a jury. See Martini v. Boeing Co., 137 Wash.2d 357, 368 (1999). Defendants seeking summary judgment, however, can come forward with evidence sufficient to establish that a rational jury could not find for the plaintiff, and the plaintiff responding to a summary judgment motion must then come forward with evidence sufficient to permit a rational jury to find in the plaintiff's favor. See Neely v. St. Paul Fire and Marine Ins. Co., 584 F.2d 341, 344 (9th Cir. 1978).

Regarding prong (1), Microsoft presents several varieties of evidence that suitable equivalent positions were available to Mr. Browne. First, Tim Woisin offered Mr. Browne a suitable position with a salary higher than his Microsoft salary. Woisin Deposition at 19. Second, Microsoft's expert testified that numerous positions existed during the period Mr. Browne could have returned to the workforce that were commensurate with Mr. Browne's experience and qualifications, including at least one in Mr. Browne's current state of residence, Florida. See Firus Declaration.

Mr. Browne contends that no suitable employment existed during the period for which he seeks back-pay. The Woisin job offer was unattractive because it would involve relocating to Boston and would also involve significant travel. The jobs identified by Microsoft's expert were unattractive because they, too, would involve relocation. Though the Ninth Circuit has not addressed squarely whether plaintiffs should be required to pursue employment opportunities involving relocation, Mr. Browne cites numerous persuasive authorities indicating that it is not his burden to relocate to take suitable employment. See, e.g., BPS Guard Services, Inc. v. International Union, United Plant Guard Workers Local 228, 45 F.3d 205, 211 (7th Cir. 1995); Coleman v. City of Omaha, 714 F.2d 804, 808 (8th Cir. 1983).

Mr. Browne's contentions regarding prong (1) are insufficient to survive summary judgment. First, Mr. Browne's reliance on the fact that the Woisin job and the suitable jobs Microsoft's expert identified would require relocation is misplaced. If Mr. Browne were to return to Microsoft in a position he deemed acceptable, he would also have had to relocate to Reno or Redmond. The relevant

ORDER – 6

determination is whether there are jobs equivalent to Mr. Browne's jobs with Microsoft; if geography is relevant to that determination, then Reno and Redmond are the relevant geographical points of comparison. Thus, the fact that there are few suitable jobs in Mr. Browne's current neighborhood is irrelevant. Second, Mr. Browne does not refute Microsoft's expert's testimony that there are numerous suitable jobs available in areas comparable to Reno and Redmond. Third, Microsoft correctly points out that the cases Mr. Browne cites for the proposition that plaintiffs are not required to relocate actually address the reasonableness of the plaintiff's job search efforts; they do not address whether suitable equivalent jobs exist.[3] For these reasons, then, Mr. Browne has not come forward with evidence sufficient to allow a rational jury to conclude that there are no suitable equivalent jobs available to Mr. Browne. Therefore, Microsoft has produced evidence sufficient to establish prong (1).

Regarding prong (2), Mr. Browne explicitly admits that he did not seek employment during the relevant period. Browne Deposition at 21, 24, 497. Instead, quite laudably, Mr. Browne worked on his own non-profit charitable foundation. There are no circumstances under which a rational jury could find that a plaintiff who completely failed to seek employment has used reasonable care and diligence in seeking equivalent positions. Therefore, Microsoft has produced evidence sufficient to establish prong (2).

Because Microsoft has produced evidence sufficient to establish both prongs of the test for failure to mitigate, it has met its burden on summary judgement with respect to Mr. Browne's claims for back-pay and front-pay. Therefore, summary judgment regarding Mr. Browne's claims for back-pay and front-pay is GRANTED.

---

[3] Mr. Browne's argument that race and age discrimination hamper his employment prospects is also unavailing. Given that he never sought employment during the relevant period (see below), he is not in a position to determine whether he would be the victim of any invidious job discrimination.

ORDER – 7

## IV. Forced Exercise Claim

Mr. Browne claims that Microsoft's alleged discriminatory conduct forced Mr. Browne to exercise his stock options before he would have liked for fear that Microsoft would somehow find a way around the law and take the options away from him. Microsoft claims that Mr. Browne fails to allege facts that would allow a rational jury to conclude that Mr. Browne was forced by Microsoft to exercise his options prematurely. While Mr. Browne is not entitled to these damages because he failed to provide adequate evidence of disparate impact, the facts also indicate that Mr. Brown has failed to allege facts that would allow a rational jury to conclude that Mr. Browne was forced by Microsoft to exercise his options prematurely

Microsoft's main argument is that Mr. Browne's allegations that Microsoft's conduct forced Mr. Browne to exercise his options prematurely are too speculative to establish that Microsoft was the legal or proximate cause of Mr. Browne's decision to exercise his stock options. Defendant's Forced Exercise Memo at 4. Mr. Browne's principal response is that the issue of legal causation is one for the jury. Plaintiff's Forced Exercise Memo at 3.

Legal causation involves an assessment of whether, as a matter of policy (or justice, or common sense, or precedent, etc.), a defendant should be held legally responsible for the consequences actually caused by its conduct. See Schooley v. Pinch's Deli Market, Inc., 134 Wash.2d 468 (1998); Hartley v. State, 103 Wash.2d 768, 777 (1985). Legal causation is a question of law to be decided by the court. Kim v. Budget Rent a Car Systems, Inc., _Wash.2d_ (2001). While Mr. Browne claims that the court must make this determination after hearing all the evidence at trial, Plaintiff's Forced Exercise Memo at 5, in fact his burden on summary judgment continues to be that he must produce evidence sufficient to allow a rational trier of fact to find in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2520 (1986). Mere allegation and speculation does not create dispute sufficient to withstand summary judgment. Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Mr. Browne has not produced evidence sufficient to withstand summary judgment. Regardless

ORDER – 8

of what Mr. Browne might have thought Microsoft would do, the fact remains that the law prevented Microsoft from revoking the stock options except in certain clearly circumscribed circumstances. Browne Deposition, Exhibit 5 at 546:23-547:1. Mr. Browne's forced exercise claim, then, amounts to the claim that Microsoft should be held liable for actions Mr. Browne took based on his belief that Microsoft would violate the law. Obvious policy considerations mandate that Microsoft not be held liable in this case. Defendants must be held liable for consequences stemming from their violations of the law, but must not be held liable for consequences stemming from someone's belief that they might violate the law. Regardless of the evidence Mr. Browne produces that Microsoft violated the law in its other business dealings, see Plaintiff's Forced Exercise Memo at 1-2, it would turn the traditional notion of justice on its head to hold a defendant liable when it violated no law. At bottom, Microsoft did nothing to try to revoke Mr. Browne's options. On Mr. Browne's theory, it would make no difference whether Microsoft actually violated the law and sought to revoke the options, or simply did nothing while Mr. Browne formed his belief that they would violate the law. But the situation in which Microsoft violates the law is relevantly different from the situation in which Microsoft did not violate the law but Mr. Browne formed the belief that it might. That difference consists in this: In the one case, Microsoft breaks the law, and in the other it does not. Microsoft would be liable for forcing Mr. Browne to exercise its options if there was any indication that Microsoft was about to violate the law and try to revoke Mr. Browne's options. Microsoft is not liable, however, when it did nothing to try to revoke Mr. Browne's options.

For the foregoing reasons, summary judgment with respect to Mr. Browne's forced exercise claim is GRANTED.

## V. Jumbo Stock Option Claim

Mr. Browne claims that he was denied a large stock option grant as a result of race and age discrimination by Microsoft. Plaintiff's Jumbo Stock Memo at 1. Microsoft claims that Mr. Browne's claim is time-barred by the statute of limitations for asserting claims under RCW 49.60 and 42 U.S.C. §

ORDER – 9

1981. The parties agree that the statute of limitations is three years. Plaintiff's Jumbo Stock Memo at 11; Defendant's Jumbo Stock Memo at 4-5. The parties do not agree, however, on when the limitations period began to run. Because key facts are in dispute, the Court is not in position to decide on summary judgment when the limitations period began to run. Because the jumbo stock claim is predicated on a finding of discrimination, however, and because Mr. Browne has failed to come forward with evidence sufficient to allow a rational jury to find that he was a victim of discrimination, the Court should dismiss Mr. Browne's jumbo stock option claim.

The limitations period begins to run when the alleged discriminatory decision is final and communicated to the employee. See Delaware State College v. Ricks, 449 U.S. 250, 261, 101 S.Ct. 498, 506 (1980) (covering Title VII and 42 U.S.C. § 1981); Albright v. State Department of Social and Health Services Division of Developmental Disabilities, 65 Wash.App. 763, 767 (1992) (covering the WLAD). Whether an employee pursues a grievance procedure with respect to the alleged discriminatory decision (i.e., "a collateral review") does not affect the running of the limitations period. Ricks, 449 U.S. at 261. According to Microsoft, Mr. Browne was informed that he was denied the jumbo stock option grant by August 16, 1996. Defendant's Jumbo Stock Memo at 6. Microsoft claims that the limitations began to run at that time. Because Microsoft was served notice of this lawsuit on August 23, 1999. If the statute of limitations began to run on or before August 16, 1996, then Mr. Browne's lawsuit would be time-barred under the three-year statute of limitations.

The limitations period does not begin to run until the employee knows or should have known that the alleged discriminatory decision was final. See Hoesterey v. City of Cathedral City, 945 F.2d 317, 320 (9th Cir. 1991). Mr. Browne concedes that he was informed initially of the jumbo stock denial in late July or early August of 1996. Browne Declaration at § 7. Mr. Browne claims, however, that he did not believe that the jumbo stock denial was final because in mid-August of 1996 he asked another person, Mr. Herbold, to review the denial to see if it could be overturned. Apparently as a result of this and other efforts, Mr. Browne's stock grant was increased from 2800 to 3800 sometime around August

ORDER – 10

29, 1996. Mr. Browne claims that his efforts to overturn the decision and his success in getting a grant of 1000 more share options show that the decision regarding his compensation package was not settled before August 29, 1996. Therefore, Mr. Browne claims, no final decision on whether he would get the jumbo stock grant had been made by August 28, 1996. Thus, according to Mr. Browne, the jumbo stock denial was not challenged "collaterally"; rather, it was not yet final. So, Mr. Browne claims, the Ricks holding that "collateral review" of an alleged discriminatory decision (e.g., through a grievance process) does not delay the running of the limitations period is irrelevant. See Ricks, 449 U.S. at 261.

The evidence Microsoft provides to show that the jumbo stock decision was final is not conclusive. Microsoft produces a computer printout of a series of email exchanges between several of Mr. Browne's superiors that indicates that Mr. Browne was provided either oral or written notice of his compensation package prior to August 17, 1996. Herbold Deposition at 248, Exhibit P85. This much is undisputed. Browne Deposition at 714, 717. Microsoft, however, fails to provide documentary evidence regarding the specific nature of this communication, apart from the fact that it was part of an "August Review". Herbold Deposition at 248, Exhibit P85. Without examining the precise communication Mr. Browne was given, the Court is in no position to determine whether a rational jury could find that Mr. Browne reasonably believed that his compensation package was not yet final. By failing to provide this documentation, Microsoft prevents the Court from finding as a matter of law that it had communicated to Mr. Browne prior to August 17, 1996 that his compensation package was final. Therefore, the Court cannot determine whether Mr. Browne's subsequent inquiries into his compensation package were further negotiations regarding an unsettle decision, or steps in a de facto grievance procedure designed to overturn a decision already made and finalized. Without that determination, the Court cannot determine whether the statute of limitations began to run prior to August 17, 1996, or sometime after that date.

Summary judgment is inappropriate when questions of fact exist as to when an employee realized that an allegedly discriminatory decision was final. See id; see also Aronsen v. Crown

ORDER – 11

Zellerbach, 662 F.2d 584, 594 (9th Cir. 1981). Because Microsoft's evidence that Mr. Browne was informed of a final compensation decision prior to August 17, 1996 is inconclusive, it would be inappropriate to grant summary judgment against his jumbo stock grant claim on these grounds.

Mr. Browne, however, has failed to come forth with evidence sufficient to permit a rational jury to find that he is the victim of race or age discrimination at Microsoft. Mr. Browne agrees that his compensation decision was made under a facially neutral policy. Plaintiff's Jumbo Stock Memo at 7. To show that a facially neutral policy is discriminatory, a plaintiff must show a disparate impact on a protected class. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990). As discussed above, Mr. Browne failed to make a sufficient showing on the issue of disparate impact.

Mr. Browne also fails to make a sufficient showing that he was the victim of any other discriminatory acts. Mr. Browne does chronicle a series of acts and decisions by his superiors at Microsoft that were adverse to him. Plaintiff's Jumbo Stock Memo at 1-11. That these acts and decisions were adverse to Mr. Browne, however, does not entail that they were discriminatory. It is clear from the record that certain of Mr. Browne's superiors did not like Mr. Browne. The evidence Mr. Browne presents that the acts and decisions of these superiors were discriminatory, however, consists only in this: (1) deposition testimony by a Microsoft employee, Kristy Fisher, that one of Mr. Browne's superiors, Mr. Connors, was more comfortable dealing with white males than women, Fisher Deposition at 42; (2) some promotions that Mr. Browne sought went to younger white employees, Plaintiff's Jumbo Stock Memo at 5. This evidence is far too weak to allow a rational jury to find that Microsoft discriminated against Mr. Browne because of his age and his race.[4]

---

[4] The insufficiency of the evidence favoring discrimination also impugns Mr. Browne's claim, under the continuing violation doctrine, that he was the victim of a series of discriminatory acts, or a pattern or practice of discrimination at Microsoft. See Milligan v. Thompson, 90 Wash.App. 586, 595 (1998); Morgan v. National Railroad Passenger Corp., 232 F.3d 1008, 1016 (9th Cir. 2000). Under the "continuing violation" doctrine, Mr. Browne claims that the statute of limitations does not prevent him from bringing his claim because the series of discriminatory acts continued into the limitations period. To demonstrate a continuing violation,

ORDER – 12

Mr. Browne has provided insufficient evidence that he is the victim of discrimination at Microsoft. For this reason, but not because the statute of limitations was shown by Microsoft to have run, summary judgment with respect to Mr. Browne's jumbo stock option claim is GRANTED.

## VI. Promissory Estoppel and Negligent Misrepresentation Claims

Finally, Mr. Browne claims that Microsoft made promises to him that he would continue to be employed by Microsoft at a salary and responsibility level commensurate to his initial employment with Microsoft, and that Microsoft broke those promises. Mr. Browne brings claims of promissory estoppel and negligent misrepresentation. The facts indicate that Mr. Browne has failed to allege facts that would allow a rational jury to conclude that Microsoft has broken promises of sufficient clarity to support claims of promissory estoppel and negligent misrepresentation.

The promises in question are these: (a) that Microsoft told Mr. Browne that he would "enjoy major career opportunities at Microsoft"; and (b) that after his first position at Microsoft was eliminated, Microsoft "would find [Mr. Browne] a position of equivalent [compensation] level and responsibility." Second Amended Complaint at §§ 6, 8. Mr. Browne alleges various expressions of these promises in his deposition testimony. Browne Deposition at 87, 94, 706.

### *(1) Promissory Estoppel*

To recover on a claim of promissory estoppel, a plaintiff must demonstrate:

(1) a promise which [sic] (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which [sic] does cause the promisee to change his position (4) justifiably relying on the promise in such a manner that (5) injustice can be avoided only by enforcement of the promise.

---

the plaintiff must show an employer-wide policy or practice, or a series of related discriminatory acts against a single individual. Sosa v. Hiraoka, 920 F.2d 1451, 1455-56 (9th Cir. 1990). Mr. Browne produces virtually no evidence of discrimination (neither a pattern nor a series of discriminatory acts), and certainly nothing on which a rational jury could base a finding of discrimination.

ORDER – 13

Havens v. C&D Plastics, Inc., 124 Wash.2d 158, 171-72 (1994). Microsoft claims that it in fact fulfilled the promise (b) on at least two occasions, and that Mr. Browne could not have justifiably relied on promise (a) because it is too vague to overcome the legal implications of Mr. Browne's status as an at-will employee.

With respect to promise (a), Microsoft is correct that the promise is too vague to overcome the at-will presumption that Mr. Browne could be terminated at any time, with or without cause. To overcome the at-will presumption, a promise must be "clear and definite." Havens, 124 Wash.2d at 173.[5] Promise (a) is the classic sort of vague promise that courts in Washington and elsewhere have routinely found not to overcome the at-will presumption. See, e.g., id at 174; Clark v. Kellogg Co., 205 F.3d 1079, 1083 (8th Cir. 2000).

With respect to promise (b), Microsoft is correct that it fulfilled this promise. Microsoft found Mr. Browne a level 14 job in the Microsoft Network organization in 1995. Herbold Deposition at 244. Microsoft also found Mr. Brown a level 14 job as Chief of Staff to John Connors in 1996. Browne Deposition at 130. Because Microsoft fulfilled this promise, it cannot form the basis of a promissory estoppel claim.[6]

*(2) Negligent Misrepresentation*

To recover on a claim of negligent misrepresentation, a plaintiff must show either that the promisor intended to deceive a promisee and did not intend to perform the promise, or that the promise was made without care or concern whether it will be kept. Markov v. ABC Transfer & Storage Co., 76

---

[5] Mr. Browne's claim that this is not an at-will context (because the issue is not Mr. Browne's termination but his demotion), and hence that the "clear and definite" standard does not apply, is unavailing. If termination (the most drastic employment sanction) constitutes an at-will context, then *a fortiori* demotion (a less drastic employment sanction) constitutes an at-will context as well.

[6] Because the Court finds that Microsoft did not breach a promise for the purpose a promissory estoppel claim, the Court does not reach the issue of whether Mr. Browne relied on such a promise to his detriment.

ORDER – 14

Wash.2d 388, 396 (1969). Mr. Browne has come forward with no evidence that Microsoft never intended to keep any promises it has made to Mr. Browne; indeed, Microsoft did keep the only specific promise it made to Mr. Browne. Therefore, Mr. Browne cannot recover on a claim of negligent misrepresentation.

For the foregoing reasons, summary judgment with respect to Mr. Browne's promissory estoppel and negligent misrepresentation claims is GRANTED.

## VII. Summary of Order

Because Mr. Browne fails to come forward with evidence sufficient to show that members of a protected class have been disproportionately selected for employment and promotion at Microsoft, summary judgment regarding Mr. Browne's disparate impact claim is GRANTED.

Because Microsoft has produced evidence sufficient to establish both prongs of the test for failure to mitigate, summary judgment regarding Mr. Browne's claims for back-pay and front-pay is GRANTED.

Because Mr. Browne's allegations that Microsoft's conduct forced Mr. Browne to exercise his options prematurely are too speculative to establish that Microsoft was the legal or proximate cause of Mr. Browne's decision to exercise his stock options, summary judgment regarding Mr. Browne's Forced Exercise claim is GRANTED.

Because Mr. Browne failed to provide adequate evidence that he was a victim of discrimination, but not because the statute of limitations period had run by the time Mr. Browne served Microsoft with notice of his suit, summary judgment regarding Mr. Browne's Jumbo Stock Option claim is GRANTED.

Because Microsoft fulfilled the only definite promises it made to Mr. Browne, summary judgment regarding Mr. Browne's Promissory Estoppel and Negligent Misrepresentation claim is GRANTED.

Pursuant to this order the clerk is directed to enter judgment in favor of defendant.

ORDER – 15

SO ORDERED this 8th day of May, 2001.

_____
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 16